PRESENT: Mims, McClanahan, Powell, Kelsey, and McCullough, JJ., and Russell and Millette, S.JJ.

THE DAILY PRESS, LLC, ET AL.

v. Record No. 160889

OFFICE OF THE EXECUTIVE SECRETARY
OF THE SUPREME COURT OF VIRGINIA, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
June 29, 2017

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

The question before us on appeal is whether the Virginia Freedom of Information Act, Code § 2.2-3700 *et seq.* ("VFOIA") entitles The Daily Press to obtain a copy of a database from the Office of the Executive Secretary of the Supreme Court of Virginia ("Executive Secretary") or whether, instead, The Daily Press must ask each jurisdiction's clerk of court for certain court records. The answer turns on whether the Executive Secretary is the legal custodian of court records or whether the clerks of court fulfill that role. We conclude that the clerks of court are the statutorily designated custodians of court records and, therefore, The Daily Press must make its request to them, not to the Office of the Executive Secretary. Consequently, we affirm the judgment of the trial court.

BACKGROUND

The Daily Press publishes a daily newspaper that is circulated on the Virginia Peninsula and surrounding communities. It also publishes stories that are available on the internet. David Ress is a reporter for The Daily Press. Ress has written articles for The Daily Press about race and the criminal justice system. Ress made a request to the Executive Secretary under the Virginia Freedom of Information Act asking for a searchable version of a database hosted on servers operated and housed at the Executive Secretary's offices in Richmond. The Executive

Secretary took the position that the circuit court clerks are the custodians of the requested information and that the request should be addressed to them. The Executive Secretary reached out to the 118 individual clerks whose information it hosted to request permission to provide this information to The Daily Press. Fifty of the clerks consented to allow the Executive Secretary to provide the information; sixty-eight clerks objected.

The Daily Press and Ress filed a petition for a writ of mandamus to compel the Executive Secretary to honor the request. The Executive Secretary defended the petition by arguing, among other things, that it is not the custodian of the records. In addition, the 68 objecting clerks of court were joined as necessary parties.

The court heard evidence about the respective duties of clerks of court and the Executive Secretary. Among other duties, the Executive Secretary serves as "the administrator of the circuit court system, which includes the operation and maintenance of a case management system." Code § 17.1-502(A). In its capacity as court administrator, the Executive Secretary has created, operated and maintained multiple electronic systems. One of those systems is the Circuit Case Management System ("CCMS"), an electronic case management database. CCMS can be used to monitor the status of cases, prepare orders and forms, prepare civil and criminal reports, generate a master calendar for the courts, and assemble daily dockets. CCMS was created in the 1980s. The clerks decide whether to use CCMS or a different system. The great majority of the clerks of the circuit courts – 118 out of 120 – have opted to use CCMS.

Clerks enter case information data into the CCMS database. This data includes a range of information about the defendant and information relating to the case, and it also includes personal information such as birthdays and social security numbers. The CCMS database is stored on a computer server that is located in the Executive Secretary's office in Richmond. The

2

Executive Secretary owns the server. The Executive Secretary does not enter data into CCMS. The clerks bear the responsibility of deleting data or records from CCMS.

The Online Case Information System, or OCIS, is another database that resides on servers at the Executive Secretary's offices. OCIS is designed to provide broader public access to case information through the internet. Like CCMS, clerks must elect to participate in OCIS. Clerks who have chosen to participate have provided written authorization to the Executive Secretary to display the case data through this database. A clerk who chooses to participate in OCIS can limit the date range of cases that can be viewed and the types of cases that can be viewed. The Executive Secretary honors the clerks' directions with respect to what information it displays on OCIS. To create the OCIS database, the Executive Secretary licenses database software which replicates information contained in the CCMS database and creates a new, second database. OCIS is an exact copy of the CCMS database. The copying process automatically occurs every 15 minutes. Unlike CCMS, OCIS is a read-only database; that is, its content cannot be changed.

Through OCIS, members of the public can search for a particular case through a party's name, hearing date, or case number. OCIS provides information about specific cases in a particular jurisdiction. Statewide searches are not available and neither are bulk-data downloads of case information. Software limits the information that the public can see through the OCIS system. For example, the public cannot see birthdates and social security numbers.

The trial court denied the petition for mandamus, reasoning that

> the public records sought by the Daily Press and contained in the online case information system (OCIS) database are not in the "custody" of [the Executive Secretary], as that term is used in Virginia's Freedom of Information Act, and, instead, each circuit court clerk is the custodian of that clerk's respective case data contained in the OCIS database.

3

This appeal followed.

ANALYSIS

At the outset, it is worth emphasizing that this Court's role is limited. Public policy questions concerning where to draw the line with respect to VFOIA fall within the purview of the General Assembly. In a regime of separated powers that assigns to the legislature the responsibility for charting public policy, our function is limited to adjudicating a question of law: does VFOIA compel the Executive Secretary to answer the request from The Daily Press or does the law instead require The Daily Press to make its VFOIA request to individual Clerks of Court?

Because the issue before us is a matter of statutory interpretation, we review the trial court's decision de novo. *Fitzgerald v. Loudoun Cnty. Sheriff's Office*, 289 Va. 499, 504, 771 S.E.2d 858, 860 (2015).

I.   CLERKS OF COURT ARE THE EXPRESSLY DESIGNATED CUSTODIANS OF COURT RECORDS.

VFOIA requires "public records" to be "open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records." Code § 2.2-3704(A). It is undisputed that the Executive Secretary is a "public body" as that term is defined by VFOIA. A Virginia citizen making a VFOIA request must make that request to the custodian of the record. *Id.* VFOIA, however, does not define the term "custodian."

The Executive Secretary and the court clerks point to Code § 17.1-242 to argue that the clerks of court are the designated custodians of court records. That statute provides as follows:

> The circuit court clerks shall have custody of and shall keep all court records, including books, evidence, records, maps, and papers, deposited in their offices or at such location otherwise designated by the clerk, as well as records stored in electronic

4

format whether the storage media for such electronic records are on premises or elsewhere.

The Executive Secretary and the clerks rely on this statute to argue that the clerks of court are the statutorily designated custodians of what are indisputably court records, and, therefore, The Daily Press must make its records request to the clerks of court.

> While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.

*Barr v. Town & Country Props.*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)). We conclude that Code § 17.1-242 plainly establishes the clerks as the custodians of the court records. In addition, this statute plainly provides that the clerks' custody extends to court records that are "stored in electronic format" and that they remain custodians even if the electronic records are stored off premises, in this instance at the Executive Secretary's offices. Because the clerks of court are the expressly designated custodians of court records, The Daily Press must address its VFOIA request to them.

This straightforward reading of Code § 17.1-242 is bolstered by a 2002 official opinion of the Attorney General. Although the question addressed in the opinion was different, the reasoning is germane to the question before us. Relying on Code § 17.1-242, the Attorney General explained that

> the circuit court clerk is responsible for the integrity of all records maintained by the clerk's office. That responsibility is not shared with any other court official, but rests exclusively with the elected clerk of the circuit court . . . .

> Accordingly, I must conclude that automated case management systems maintained by the clerk of a circuit court, whether the

5

storage media is on or off premises, are records of the clerk's office under the custody of such clerk. Access to such a case management system lies within the sound discretion of the clerk.

2002 Op. Atty. Gen. Va. No. 02-026 (April 04, 2002). The Attorney General reiterated this conclusion in 2013. 2013 Op. Atty. Gen. Va. No. 13-047 (August 20, 2013). The General Assembly has taken no corrective action to dispel the Attorney General's conclusion that the clerk of court is the official who has custody of court records.

This designation of court clerks as the custodians of court records accords with longstanding historical practice. Clerks of court have borne the responsibility of maintaining court records for public access since colonial times. *See* 1 William Waller Hening, Statutes at Large 303-04 (1823) (citing the Act X of November 1645 under King Charles I, designating "clerkes [sic] of the courts . . . [to] keep records of the proceedings of all actions and causes aforesaid"); *see also* Hugh F. Rankin, The General Court of Colonial Virginia, Colonial Williamsburg Foundation Library Research Report Series – 0088, Colonial Williamsburg Foundation Library (1958) ("The Clerk of the General Court was responsible for keeping the records of the court . . . the publication of court orders, issuing subpoenas, and the preparation of the court docket.").

The VFOIA directs persons who wish to obtain public records to direct the request at the custodian of the records. Code § 17.1-242 designates the clerks of court as the custodians of court records. Both CCMS and OCIS are indisputably "court records." Accordingly, a request for court records must be made to the custodian of those records, the clerks of court.

The Daily Press makes several arguments to resist this conclusion. First, it argues that Code § 17.1-242 is irrelevant and that we should instead look exclusively to VFOIA as the sole text to determine who is the custodian of a record. Code § 17.1-242 is not part of VFOIA. The

6

term "custodian" is not defined in VFOIA, so, The Daily Press argues, we should give that word its ordinary meaning, namely, someone who has possession of something. Since the Executive Secretary is a "public body" in possession of a "public record," it is the "custodian" of the record and, therefore, the database must be disclosed.

We conclude that this is the wrong approach. VFOIA states that public records must be open to copying and inspection from the custodian, "[e]xcept as otherwise specifically provided by law." Code § 2.2-3704. We agree that in the ordinary situation, a "custodian" for VFOIA purposes is the public body in possession of such a record. It is certainly possible that there might be more than one custodian of a public record. With respect to court records, however, the General Assembly has "otherwise specifically provided by law" by designating court clerks as the persons who have custody of court records. Therefore, a VFOIA request for court records must be made to them.[1]

This conclusion draws further support from the functions the General Assembly has ascribed to court clerks and to the Executive Secretary. A wide range of statutes call for clerks of court to maintain court records for, among other things, public access. *See* Code § 17.1-206 *et seq.* The Executive Secretary, on the other hand, is tasked with a support role for "the circuit court system, which includes the operation and maintenance of a case management system." Code § 17.1-502(A). The General Assembly's designation of circuit court clerks as the custodians of court records in Code § 17.1-242 is part of an overall statutory scheme that delineates for circuit court clerks the role of maintaining court records and providing the public

---

[1] The clerks intimate that VFOIA may not apply at all to them, at least with certain kinds of public court records. We do not address this question, because it is not before us. What is before us is a VFOIA request addressed to the Executive Secretary and whether the Executive Secretary must answer such a request or whether that request should be directed elsewhere.

with access to court records. The General Assembly has allocated a support role for the Executive Secretary. The fact that the Executive Secretary supplies the software and server hardware for CCMS and OCIS does not render the Executive Secretary the custodian of the court records any more than if the Executive Secretary had supplied the clerks with the ink, paper, and file cabinets to generate and store these records.

Amicus for The Daily Press argues that Code § 17.1-242 is limited to records that are "deposited" in the clerks' offices. The plain language of Code § 17.1-242, however, does not lend itself to this construction. It designates clerks as the custodians of "all court records," which certainly includes those records that are "deposited in their offices," but the statute further designates the clerks as custodians of all "records stored in electronic format whether the storage media for such electronic records are on premises or elsewhere." *Id.*

The Attorney General also points to Code § 2.2-3704(J), which specifies that

> [i]n the event a public body has transferred possession of public records to any entity, including but not limited to any other public body, for storage, maintenance, or archiving, the public body initiating the transfer of such records shall remain the custodian of such records for purposes of responding to requests for public records made pursuant to this chapter and shall be responsible for retrieving and supplying such public records to the requester.

Disputing the applicability of this provision, The Daily Press argues that no records were ever "transferred" to the Executive Secretary. We disagree. The evidence establishes an agreement between the clerks of court and the Executive Secretary to transfer custody of computerized court records from the moment of their creation to the Executive Secretary. Here, the record is the data. The clerks of court enter case information and case management data into a computer system. In so doing the clerks are either creating or updating an electronic record. Once they have keyed in the information, the clerks then transfer the data via electronic impulse to the

8

Executive Secretary servers, where the data is stored. To "transfer" simply means "to carry or take from one person or place to another" or "to cause to pass from one person or thing to another: transport." Webster's Third New International Dictionary 2426-27 (1993). Code § 2.2-3704(J) establishes that when clerks create or update a record and then send or transfer that record to the Executive Secretary, that transfer does not turn the Executive Secretary into the custodian of the record.

Amicus for The Daily Press seeks to draw a distinction between a "stream of data" and a "record" for purposes of VFOIA. The term "public records" is very broadly defined as

> all writings and recordings that consist of letters, words or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostatting, photography, magnetic impulse, optical or magneto-optical form, mechanical or electronic recording or other form of data compilation, however stored, and regardless of physical form or characteristics, prepared or owned by, or in the possession of a public body or its officers, employees or agents in the transaction of public business.

Code § 2.2-3701. With computer database systems, to which data is constantly added, and which data are transmitted and stored electronically, the electronically stored data *is* the public record. The data constitute letters, words, and numbers, that are "prepared" by the clerks "in the transaction of public business." Any distinction between "records" and "data" in this context would be entirely artificial.

The Daily Press also raises the prospect that governmental actors could play a confusing shell game, shifting records from one governmental actor to another and thereby thwarting public access. We see little danger of such a practice here. The Code expressly designates the clerks as custodians of court records. Clerks have served as the custodians of court records for centuries. The public knows or can easily find out where to ask for court records.

9

The Daily Press also attempts to draw a distinction between CCMS and OCIS. It stresses the fact that OCIS is an entirely different database that is created by the Executive Secretary when it duplicates CCMS. First, like CCMS, OCIS is a "court record" brought into being by the consent of a clerk of court, to serve the needs of court clerks, and of which the clerks statutorily have custody under Code § 17.1-242. Second, Code § 2.2-3704(G) provides that "[t]he excision of exempt fields of information from a database or the conversion of data from one available format to another shall not be deemed the creation, preparation, or compilation of a new public record." Therefore, when the Executive Secretary uses database replication software to create OCIS, which is a read-only copy of CCMS, it does not create a new record for purposes of FOIA.

Finally, The Daily Press cites the provisions of Code § 2.2-3700, which call for the provisions of VFOIA to be "liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government." Code § 2.1-3700(B). The liberal construction of a statute is one thing. Substituting our judgment for what the General Assembly has expressed would be another. The General Assembly has expressly designated the clerks as the custodians of court records. The issue before us, moreover, is not whether records should be made public or shielded from public view. There is no question the public can gain access to a wide range of court records. The question is which governmental entity should respond to The Daily Press' request under VFOIA

10

for public records. Here, court clerks are the expressly designated custodians of the public records sought by The Daily Press.[2]

## CONCLUSION

For these reasons, the judgment below will be affirmed.[3]

*Affirmed.*

---

[2] We have considered *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989), cited by The Daily Press, but consider it inapposite due to the differences in statutory language between the VFOIA and its federal counterpart.

[3] In light of our holding, The Daily Press' request for attorney's fees is moot.