PRESENT:  All the Justices

VIRGINIA EDUCATION ASSOCIATION, ET AL.

OPINION BY
JUSTICE CLEO E. POWELL
August 31, 2017

v.  Record No. 161017

BRIAN C. DAVISON


COMMONWEALTH OF VIRGINIA DEPARTMENT OF EDUCATION

v.  Record No. 161025

BRIAN C. DAVISON


LOUDOUN COUNTY SCHOOL BOARD

v.  Record No. 161031

BRIAN C. DAVISON


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Judge Designate

The Virginia Department of Education ("VDOE") appeals from the judgment of the

Circuit Court of the City of Richmond ("circuit court") directing it to produce student growth

percentile ("SGP") data for certain Loudoun County Public School students under the Virginia

Freedom of Information Act, Code § 2.2-3700 *et seq.* ("VFOIA").  The Loudoun County School

Board ("School Board") and the Virginia Education Association ("VEA") sought to intervene in

the matter.[1]  The circuit court permitted the School Board to intervene limited to the issue of

---

[1] The Virginia School Board Association and the Virginia Association of School
Superintendents also filed motions to intervene.  They did not appeal.

whether Code § 22.1-295.1(C) applied to preclude disclosure of the requested information.[2] The

circuit court denied the motion to intervene filed by the VEA. These appeals followed.

I.     BACKGROUND

The facts of the case are not in dispute. Brian C. Davison ("Davison") contacted

Loudoun County Public Schools requesting Standards of Learning ("SOL") test results for

students in the County's schools. Davison was informed that VDOE was the custodian of the

information he sought and was advised to submit his request to VDOE.

Davison thereafter sent a VFOIA request to VDOE for the English and math assessment

SGP aggregated score results for Loudoun County Public Schools sorted by teacher and by

school over the past five years along with an explanation of the methodology used to calculate

the assessment scores. In response to his request, VDOE indicated that score results do not

include information for individual teachers. Davison provided VDOE with a link to its own

website where an exemplar "Annotated Division Report" showed that VDOE had in fact

compiled SGP results by teacher and school in the past.

VDOE next responded that, despite the exemplar on the website, no such reports existed

and that "the records that you are requesting only exist in a database that contains information

directly related to students, they are considered scholastic records, which are exempt from

disclosure under Va. Code Section 2.2-3705.4." Davison responded that, based on publicly

available information, he believed that VDOE could produce summary reports that did not

include student identifying information. VDOE acknowledged that such reports did exist at one

_____

[2] The School Board also sought to intervene to raise the personnel exemption under Code
§ 2.2-3705.1(1); the personal information exemption under Code § 2.2-3705.1(10), as defined in
Code § 2.2-3801; and the scholastic records exemption under Code § 2.2-3705.1(4). We do not
reach these issues because of the disposition we make regarding confidentiality of personnel
records under Code § 22.1-295.1(C).

time, but were no longer produced and again asserted that they were exempt from disclosure under VFOIA.

On October 2, 2014, Davison filed a verified petition for a writ of mandamus requesting that the circuit court require VDOE to produce the SGP data. Davison also requested an award of attorney's fees, costs, and statutory civil damages for willful violation of VFOIA.[3] VDOE responded to the petition by demurrer. The circuit court overruled the demurrer and held an ore tenus hearing. The principal issue covered by the testimony and argument of the parties was whether the information Davison sought was subject to the exemption in Code § 2.2-3705.4 for "scholastic records" and the corresponding federal law protecting student privacy. *See* 20 U.S.C. § 1232g.

In an opinion letter dated January 9, 2015, the circuit court found that the VFOIA exemption and federal protections did not apply. In its ruling, the circuit court noted that the section VDOE relied on covered a number of exemptions related to scholastic records. The circuit court noted further that the "issue seem[ed] to be confined to whether the information sought contains 'information concerning identifiable individuals.'" Specifically, the court noted that VDOE admitted that its database could produce reports with the information Davison requested without disclosing any student identifying information. Moreover, because the information in such reports was available in other forms, the court rejected VDOE's contention that it was being required to "creat[e] . . . a new public record" in order to respond to the request. The circuit court ordered that the writ of mandamus should issue.

---

[3] Davison named two VDOE employees as defendants for this claim. This issue is not before the Court on appeal.

On February 6, 2015, the VEA filed a motion to intervene in the mandamus proceeding. On February 11, 2015, the School Board also sought to intervene. The circuit court denied the motions to intervene finding that, as private entities, they were not subject to an action to enforce VFOIA and, thus, had no standing to intervene. However, the circuit court stated that it would grant the School Board's motion to intervene for the limited purpose of asserting an exemption for "aggregate teacher performance indicators or other data" as being confidential portions of teachers' personnel files as defined in Code § 22.1-295.1(C).[4] The circuit court further indicated that it would grant a motion to rehear filed by VDOE raising the same issue.

On rehearing, the circuit court entered three orders denying VDOE's demurrer, denying the motions of the various education associations to intervene, and entering final judgment for Davison and against VDOE and "the Intervenor Loudoun County School Board on its motion to intervene previously granted." The circuit court found "in favor of [Davison] on the remaining issue: whether Va. Code Ann. § 22.1-295.1 precludes disclosure of teacher identifying information as and under the term 'teacher performance indicator' and whether such disclosure shall be made under the [c]ourt's prior ruling on January 9, 2015." Responding to the School Board's argument that the data sought was exempt as personnel records under Code § 22.1-295.1(C), the circuit court ruled:

> While the evidence revealed that student growth percentiles can be used for multiple purposes, including teacher evaluation, on balance considering the testimony and evidence the student growth percentiles have not been used as a teacher performance indicator by Loudoun County Public Schools.

---

[4] The circuit court ordered the production of disaggregated data, with redaction of identifying student information, but no redaction of identifying teacher information. Therefore, VDOE and the Intervenors sought rehearing and intervention.

4

The circuit court directed VDOE to "produce and provide nonexempt fields of information maintained in its database, excising exempt fields of information in accordance with law pursuant to Va. Code Ann. § 2.2-3704(G)." The circuit court also awarded Davison $35,000 in attorney's fees and costs against VDOE.

The VDOE, the VEA, and the School Board each filed notices of appeal from the April 12, 2016 final order. VDOE filed a motion "to stay" enforcement of the circuit court's order pending appeal. The School Board filed a motion "to suspend" the court's final order. On May 13, 2016, the circuit court entered an order purporting to both "suspend" the final order and "stay" its enforcement effective May 4, 2016.

On May 18, 2016, the circuit court entered an "amended" final order *nunc pro tunc* to April 12, 2016, in which it assigned joint liability for the award of attorney's fees and costs to VDOE and the School Board and also denied the civil damages sought by Davison against the VDOE employees. The School Board filed a second notice of appeal on May 18, 2016, in which it specifically objected to the entry of the amended final order.

## II. ANALYSIS

### A. Code § 22.1-295.1(C)

On issues of statutory interpretation, we review the circuit court's decision de novo. *Fitzgerald v. Loudoun Cnty. Sheriff's Office*, 289 Va. 499, 504, 771 S.E.2d 858, 860 (2015). "VFOIA requires 'public records' to be 'open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records.'" *The Daily Press, LLC v. Office of the Exec. Sec'y of the Sup. Ct. of Va.*, 293 Va. 551, 557, 800 S.E.2d 822, 824 (2017) (quoting Code § 2.2-3704(A)).

5

At the time of the underlying proceedings, Code § 22.1-295.1[5] provided:

> A. Personnel files of all school board employees may be produced and maintained in digital or paper format.
>
> B. Information determined to be unfounded after a reasonable administrative review shall not be maintained in any employee personnel file, but may be retained in a separate sealed file by the administration if such information alleges civil or criminal offenses. Any dispute over such unfounded information exclusive of opinions retained in the personnel file, or in a separate sealed file, notwithstanding the provisions of the Government Data Collection and Dissemination Practices Act (§ 2.2-3800 et seq.), shall be settled through the employee grievance procedure as provided in §§ 22.1-306 and 22.1-308 through 22.1-314.
>
> C. Teacher performance indicators, or other data used by the local school board to judge the performance or quality of a teacher, maintained in a teacher's personnel file or otherwise shall be confidential but may be disclosed (i) pursuant to court order, (ii) for the purposes of a grievance proceeding involving the teacher, or (iii) as otherwise required by state or federal law. Nothing in this subsection shall be construed to prohibit the release or to limit the availability of nonidentifying, aggregate teacher performance indicators or other data.

In requiring VDOE to produce the SGP data, the circuit court found: "While the evidence revealed that student growth percentiles can be used for multiple purposes, including teacher evaluation, on balance considering the testimony and evidence the student growth percentiles have not been used as a teacher performance indicator by Loudoun County Public Schools." VDOE and the School Board argue that this finding is erroneous because the SGP data remains a teacher performance indicator regardless of whether it was used in teacher evaluations. Davison responds that the circuit court did not err because the SGPs are not teacher performance indicators. The indicators, he argues, must actually be used to evaluate teachers to qualify for confidentiality and here they were not used to evaluate Loudoun's teachers.

---

[5] The statute was amended, effective July 1, 2016, and contains revisions to subsection C. *See* 2016 Acts ch. 390.

1. SGP Data as a Teacher Performance Indicator

As a threshold matter, the Court must determine whether SGP data constitutes teacher performance indicators. Article VIII, Section 2 of the Virginia Constitution requires VDOE to determine standards of quality for Virginia's public school divisions, subject to revision by the General Assembly. Seven Standards of Quality are codified in Title 22.1, Chapter 13.2. Standard 5, Quality of classroom instruction and educational leadership, requires, in part:

> Consistent with the finding that leadership is essential for the advancement of public education in the Commonwealth, teacher, principal, and superintendent evaluations shall be consistent with the performance standards included in the Guidelines for Uniform Performance Standards and Evaluation Criteria for Teachers, Principals, and Superintendents. Evaluations shall include *student academic progress* as a significant component and an overall summative rating. Teacher evaluations shall include regular observation and evidence that instruction is aligned with the school's curriculum. Evaluations shall include identification of areas of individual strengths and weaknesses and recommendations for appropriate professional activities.

Code § 22.1-253.13:5(B) (emphasis added).

VDOE adopted "Guidelines for Uniform Performance Standards and Evaluation Criteria for Teachers" effective July 1, 2012. The Guidelines define seven different Performance Standards to use when evaluating teachers. The Performance Standards are "examples of observable, tangible behavior that indicate the degree to which teachers are meeting each teaching standard." "Performance standards define the criteria expected when teachers perform their major duties." Performance Standard 7: Student Academic Progress states that "[t]he work of the teacher results in acceptable, measurable, and appropriate student academic progress."

Student academic progress under Standard 7 is measured in part by SGPs. "The Virginia teacher evaluation system includes the documentation of student growth as indicated within Standard 7 and recommends that the evidence of progress be reviewed and considered

7

throughout the year." The SGPs contain a student identifier, school division, school name, year, grade, level, subject, teacher license number, SOL scaled score, SOL performance level, SGP number, and SGP level, listed by student.

The Guidelines recommend that "[a]t least 20 percent of the teacher evaluation (half of the student academic progress measure) is comprised of student growth percentiles as provided from the [VDOE] when the data are available and can be used appropriately." Before SGPs can be used as an evaluation tool, they must be validated, which includes ensuring that the identified teacher who administered the test from which the percentile was calculated actually taught the identified student attached to that score.

In 2014, Loudoun County Public Schools revised its Licensed Employee Evaluation Procedures to bring them into alignment with the Guidelines. Teacher evaluations are to include a "body of evidence to determine student academic progress" for Guidelines Standard 7. SGPs are listed as student academic progress data to be used in defining student progress for teacher evaluations under Standard 7. The teacher evaluation forms "represent[] a formal summary of the educator's performance. All seven standards must be addressed on the evaluation form." A copy of the completed evaluation form is contained in each teacher's personnel file.

SGPs are frequently referenced as indicators of student academic progress for evaluating teacher performance both in the Guidelines and the Loudoun County Public School's evaluation procedures handbook. Based on the evidence presented to the circuit court, the Court finds, as a matter of law, that SGPs are teacher performance indicators.

2. Confidentiality of Teacher Performance Indicators

Having determined that SGPs are teacher performance indicators, the Court must determine whether they are confidential under Code § 22.1-295.1(C) even if they are not used in

8

teacher evaluations.  The Court has not previously interpreted Code § 22.1-295.1(C), which states, in pertinent part, "[t]eacher performance indicators, or other data used by the local school board to judge the performance or quality of a teacher, maintained in a teacher's personnel file or otherwise shall be confidential."  VDOE and the School Board argue that the express and plain language of the statute coupled with the legislative intent indicate that SGPs as teacher performance indicators are confidential.  Specifically, they argue that the placement of the commas in subsection C supports their argument that SGPs, whether used or not, are part of a teacher's confidential personnel file.  Even if, as the circuit court found, the SGPs were not used by Loudoun County for their previous teacher evaluations, the VDOE argues that it clearly expects, as do teachers, that the SGPs may be used in teacher evaluations as they are teacher performance indicators.  Davison responds that the statute requires that the teacher performance indicators or other data must be used in teacher evaluations to be confidential.

"'When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity.'"  *Butler v. Fairfax Cnty. Sch. Bd.*, 291 Va. 32, 37, 780 S.E.2d 277, 280 (2015) (quoting *Payne v. Fairfax Cnty. Sch. Bd.*, 288 Va. 432, 436, 764 S.E.2d 40, 43 (2014)).

> A statute is ambiguous if the text can be understood in more than one way or refers to two or more things simultaneously[,] or when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness.  An absurd result describes situations in which the law would be internally inconsistent or otherwise incapable of operation.

*Id.* (quoting *Covel v. Town of Vienna*, 280 Va. 151, 158, 694 S.E.2d 609, 614 (2010)).

Code § 22.1-295.1(C) is not ambiguous.  Davison argues that, in order to be confidential, the teacher performance indicators must actually be used.  However, his construction of the

statute "contravenes the rule of the last antecedent." *Butler*, 291 Va. at 37, 780 S.E.2d at 280. "Under that rule, referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." *Id.* (quoting *Newberry Station Homeowners Ass'n v. Board of Supervisors*, 285 Va. 604, 615, 740 S.E.2d 548, 554 (2013) (internal quotation marks and alteration omitted)). *See also Scott v. Commonwealth*, 292 Va. 380, 384 & n.2, 789 S.E.2d 608, 609 & n.2 (2016) ("An 'antecedent' is defined as a 'preceding thing,' or 'any group of words replaced or referred to by a substitute.'" (citations omitted)).

Similarly, as the VDOE and the School Board argued, grammatical rules regarding comma use support its interpretation. Applying the rule of the last antecedent to Code § 22.1-295.1(C), we conclude that the phrase "used by the local school board" refers solely to the phrase "other data" and not to the phrase "teacher performance indicators." Read through that prism, it is only the "other data" that must be used by the local school board in order for it to be held confidential. Actual use does not apply to teacher performance indicators.

> Generally, phrases separated by a comma and the disjunctive "or," are independent. *See, e.g., Ruben v. Secretary of HHS*, 22 Cl. Ct. 264, 266 (1991) (finding that, the word "or" connects two parts of a sentence, "'but disconnects their meaning'" (quoting G. Curme, A Grammar of the English Language, Syntax 166 (1986))); *Quindlen v. Prudential Ins. Co.*, 482 F.2d 876, 878 (5th Cir. 1973) (noting disjunctive results in alternatives, which must be treated separately); *United States v. Erdos*, 474 F.2d 157, 160 (4th Cir. 1973) (finding that limiting phrase in statute is independent of and does not modify two earlier phrases because the limiting phrase is separated from the first two by a comma and the disjunctive "or"); *United States v. Riely*, 169 F.2d 542, 543 (4th Cir. 1948) (interpreting the use of a comma and the disjunctive "or" as implying two separate and independent phrases in a Virginia statute authorizing payment of dividends by corporation "out of net earnings, or out of its net assets in excess of its capital").

*Smoot v. Commonwealth*, 37 Va. App. 495, 501, 559 S.E.2d 409, 412 (2002).

Accordingly, the phrase "or other data used by the local school board" is independent of and does not modify "teacher performance indicators." Applying these rules of grammar to Code § 22.1-295.1(C), we find that the word "used" refers solely to "other data" and not to "teacher performance indicators." The information in the SGPs are teacher performance indicators and disclose identifiable teacher information, including teacher names and license numbers. We find that the SGPs requested by Davison are confidential pursuant to Code § 22.1-295.1(C). Therefore, the circuit court erred in ordering the production of these documents containing teachers' identifiable information.[6]

### III. ATTORNEY'S FEES AND COSTS

VDOE argues that the circuit court erred in awarding $35,000 in attorney's fees and costs to Davison under Code § 2.2-3713(D). The School Board argues that the circuit court erred in amending its final order to require the School Board share in the attorney's fees and costs awarded to Davison. Davison responds that the circuit court did not err and both parties are responsible for the award of fees and costs.

Code § 2.2-3713(D) allows a reasonable award of attorney's fees and costs "from the public body" where the rights and privileges of the statute are denied and the petitioner substantially prevails in an action to compel compliance. VDOE is the public body and custodian of the records, therefore, it was error for the circuit court to order that the School Board share in the attorney's fees and costs. As the determination of reasonable fees "rests within the sound discretion of the trial court," we remand the issue of attorney's fees for

---

[6] Because we hold that the circuit court erred in finding SGPs were not teacher performance indicators, the remaining issues argued by the School Board and the VEA regarding intervention are moot.

determination in light of the holding in favor of the VDOE on this appeal. *Ulloa v. QSP, Inc.*, 271 Va. 72, 82, 624 S.E.2d 43, 49 (2006). The circuit court must reconsider whether to award attorneys' fees and, if so, the appropriate amount.

IV. CONCLUSION

For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

12