PRESENT:  All the Justices

NICHOLAS W. CUPP

v.  Record No. 250902

DELTA AIR LINES, INC., ET AL.

OPINION BY
JUSTICE WESLEY G. RUSSELL, JR.
APRIL 2, 2026

UPON A QUESTION OF LAW CERTIFIED BY THE UNITED STATES
COURT OF APPEALS FOR THE FOURTH CIRCUIT

The United States Court of Appeals for the Fourth Circuit entered a certification order

asking this Court to answer a determinative question of Virginia law presented in *Cupp v. Delta*

*Air Lines, Inc.*, 154 F.4th 178 (4th Cir. 2025).  Pursuant to Article VI, Section 1 of the

Constitution of Virginia and Rule 5:40, we agreed to answer the following question posed by the

Fourth Circuit:  "Is a nonmandatory reporter who made a good-faith complaint regarding

suspected child abuse to law enforcement without speaking to a Department of Social Services

employee entitled to the immunity from civil liability provided by Virginia Code § 63.2-1512?"

For the reasons that follow, the answer to the question is "no."

I.  BACKGROUND

In December 2019, Appellant Nicholas Cupp ("Cupp"), was flying from Memphis,

Tennessee to Newport News, Virginia along with his wife, Sheila, his in-laws, and his thirteen-

year-old daughter, "M.L.C."  The family was traveling on Delta Air Lines, Inc. ("Delta") and

Endeavor Air, Inc. ("Endeavor") to attend Cupp's son's graduation from United States Coast

Guard training.  All members of the family possessed valid, government-issued photographic

identification; checked into the flight together; and made it through security and the first leg of

their journey—Memphis to Atlanta—without incident.

Trouble began after the family boarded their second flight, this one from Atlanta to Newport News. According to Cupp, M.L.C., whom he was seated next to, became distressed when the flight began experiencing turbulence. He began comforting her, behavior that Delta flight attendant Cheryl Thomas ("Thomas") apparently interpreted as something nefarious. Thomas informed the flight captain of her suspicions that Cupp may be engaged in human trafficking or might be engaged in the sexual abuse of M.L.C. The captain passed Thomas' suspicions on to Delta's airport station manager, who in turn called the police. The plane, at this point, was still airborne. Neither Thomas nor anyone else at Delta is alleged to have made a report to or filed a complaint with either the Virgina Department of Social Services or any local social services department.

Police officers met the flight when it landed and boarded the plane before Cupp and his family could disembark. Thomas pointed Cupp out to the police, who took him into investigative detention, separating him from his wife and daughter but staying within the airport and, as Cupp notes, within view of the public. Cupp and M.L.C. were both questioned by the police about Thomas' allegations. M.L.C. was visibly "upset and scared and was crying." Ultimately, the officers concluded "there was no probable cause to charge or arrest Nicholas Cupp."

In December 2021, Cupp filed a five-count complaint against Thomas, Delta, and Endeavor (collectively "the defendants") in the Circuit Court of the City of Newport News. He alleged that the defendants' actions were negligent, intentionally inflicted emotional distress, constituted tortious interference with his parental rights, and resulted in his false imprisonment. He asserted that the ordeal caused severe harm, including fragmented sleep, nightmares, headaches, and other symptoms of severe emotional trauma. According to Cupp, his doctor

concluded that the experience significantly aggravated his pre-existing Post-Traumatic Stress Disorder, which had its origin in his Army service in Iraq. He further alleged that the severe emotional distress he suffered had taken a toll on his marriage and even kept him from expressing public affection for M.L.C., lest someone misinterpret it as abusive behavior.

Defendants removed the case to the United States District Court for the Eastern District of Virginia and filed a motion to dismiss for failure to state a claim on the ground that they were immune from suit pursuant to Code § 63.2-1512. That statute provides that

> [a]ny person making a report pursuant to § 63.2-1509, a complaint pursuant to § 63.2-1510, or who takes a child into custody pursuant to § 63.2-1517, or who participates in a judicial proceeding resulting therefrom shall be immune from any civil or criminal liability in connection therewith, unless it is proven that such person acted in bad faith or with malicious intent.

Cupp opposed the motion, arguing that the statute only immunized good-faith, non-malicious complaints of suspected child abuse made in the four scenarios specified in the statute and that Thomas' conduct did not fall into any of those categories. Defendants, noting that child abuse is a serious problem, argued that the overriding purpose of Code § 63.2-1512 is to prevent child abuse, and therefore, provided immunity even if Thomas' conduct did not fit neatly within one of the four delineated categories.

The district court found that the immunity provided by Code § 63.2-1512 applied, granted the motion, and dismissed all of Cupp's claims with prejudice. In doing so, it "decline[d] to find that Defendants' report to law enforcement rather than DSS bars the application of immunity" and held that Cupp "ha[d] not sufficiently alleged that Defendants acted in bad faith or with malicious intent, even when the allegations are viewed in the light most favorable to" Cupp.

Cupp then appealed to the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit "readily conclude[d] that Cupp did not plausibly allege that flight attendant Thomas acted with bad faith or malicious intent when she reported her concern that [M.L.C.] was being sexually abused or trafficked[,]" but was less surefooted on the question of whether nonmandatory reporters are entitled to immunity under Code § 63.2-1512 if they did not make a complaint to a Department of Social Services employee. "Given the importance of this issue to the operation of Virginia's reporting statute and finding no controlling decisions by either the Supreme Court of Virginia or the Court of Appeals of Virginia," the Fourth Circuit certified the question to this Court. *Cupp*, 154 F.4th at 180, 185.

Pursuant to the authority granted by Article VI, Section 1 of the Constitution of Virginia and Rule 5:40, we now answer that question.

## II. ANALYSIS

### A. Standard of review

In answering a certified question of Virginia law posed by another court, we are not reviewing the decision of a lower court, but rather, are called on to answer the question in the first instance. Here, the question posed is one of statutory interpretation, and hence, presents a pure question of law for our consideration. *Virginia Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 454 (2022).

"We have repeatedly said that, when interpreting and applying a statute, we assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words." *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 616 (2013) (internal quotation marks, brackets, and citations omitted). To the extent that divining the General Assembly's intent is necessary to place the statutory language in context,

4

we remain "bound by that language and will not add words to the statute that would expand the scope of the statute." *Seguin v. Northrop Grumman Sys. Corp.*, 277 Va. 244, 248 (2009). Unless faced with ambiguity or absurdity, we accord the words of a statute their plain meaning. *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 469 (2022). It is not our function to create categories or exceptions that the General Assembly chose not to include in the statutory language.

B. Immunity provided by Code § 63.2-1512

As noted above, the plain language of Code § 63.2-1512 provides specified individuals with immunity "from any civil or criminal liability in connection" with certain reports or other activities related to suspected child abuse and neglect so long as the specified individual who made the report or engaged in the activity did not "act[] in bad faith or with malicious intent." The statute expressly provides such immunity in four discrete circumstances: (1) a "report pursuant to § 63.2-1509"; (2) "a complaint pursuant to § 63.2-1510"; (3) when a child is taken "into custody pursuant to § 63.2-1517"; and (4) when an individual "participates in a judicial proceeding resulting" from one of the other three categories. Code § 63.2-1512.

The certified question we have been asked to answer—"Is a nonmandatory reporter who made a good-faith complaint regarding suspected child abuse to law enforcement without speaking to a Department of Social Services employee entitled to the immunity from civil liability provided by Virginia Code § 63.2-1512?"—excludes three of the four categories specified in Code § 63.2-1512's grant of immunity. The question does not inquire about the immunity afforded mandatory reporters under Code § 63.2-1509,[1] the immunity afforded those

---

[1] Code § 63.2-1509 identifies by occupation or training twenty specific subcategories of individuals who, if they "have reason to suspect that a child is an abused or neglected child," must "report the matter immediately to the local department of the county or city wherein the

5

who take custody of a child pursuant to Code § 63.2-1517, or the immunity afforded individuals who participate in the specified judicial proceedings.

By its terms, the certified question is limited to "a nonmandatory reporter" who seeks immunity from civil liability for making a complaint related to suspected child abuse or neglect. As a result, the only potentially relevant category specified in Code § 63.2-1512 relates to complaints made "pursuant to § 63.2-1510[.]"

C.  Code § 63.2-1510

Subject to an exception not applicable here,[2] Code § 63.2-1510 provides that

> [a]ny person who suspects that a child is an abused or neglected child may make a complaint concerning such child . . . to the local department of the county or city wherein the child resides or wherein the abuse or neglect is believed to have occurred or to the Department's toll-free child abuse and neglect hotline.

For the purpose of Code § 63.2-1510, "Department" is defined as "the State Department of Social Services" and "local department" is defined as "the local department of social services in any county or city in the Commonwealth."  Code § 63.2-100.

The statutory language is specific and clear.  As pertinent here, Code § 63.2-1510 authorizes a nonmandatory reporter to make a complaint regarding suspected child abuse or

---

child resides or wherein the abuse or neglect is believed to have occurred or to the Department's toll-free child abuse and neglect hotline[.]"  Code § 63.2-1509(A).  The statute further provides that such mandatory reporters face fines or, in some circumstances, criminal penalties that could include jail time for failing to make a report required by the statute.  Code § 63.2-1509(D). Flight attendants are not included in the list of mandatory reporters.

[2] The statute provides that, "[i]f an employee of the local department is suspected of abusing or neglecting a child," a nonmandatory reporter shall make the complaint "to the court of the county or city where the abuse or neglect was discovered."  Code § 63.2-1510.  The certified question we have been asked to answer does not address a scenario where the person suspected of abuse or neglect is an employee of a local department and a complaint of abuse or neglect has been made to an appropriate court.

neglect to the appropriate local department of social services or by calling the Department's "toll-free child abuse and neglect hotline." Absent the limited exception for circumstances when an employee of the local department of social services is suspected of having committed the abuse or neglect, Code § 63.2-1510 does not authorize a nonmandatory reporter to make such a complaint to any other person or entity. Accordingly, a complaint made by a nonmandatory reporter to a person or entity other than the local department or the Department's toll-free child abuse and neglect hotline is not "a complaint pursuant to § 63.2-1510" for the purpose of determining a person's entitlement to immunity under Code § 63.2-1512.

The unambiguous statutory language makes clear that the answer to the certified question is "no." As relevant to the question posed, only complaints made pursuant to Code § 63.2-1510 could trigger the immunity provided for in Code § 63.2-1512. Because Code § 63.2-1510 only authorizes complaints to the local department, the Department's toll-free hotline or, in circumstances not present here, to a local court, complaints to any other person or entity, including "a good-faith complaint regarding suspected child abuse to law enforcement without speaking to a Department of Social Services employee[,]" are not authorized by Code § 63.2-1510. As a result, such unauthorized complaints by a nonmandatory reporter cannot trigger the immunity protections found in Code § 63.2-1512.

Despite the clear and unambiguous language, defendants resist the conclusion that naturally flows from the words used by the General Assembly. They argue that public policy concerns and the absurdity canon of statutory construction dictate that we go beyond the statutory language and grant immunity to people who do not fall within the language of the statute. We find neither argument convincing.

In advancing their public policy argument, defendants rely on two uncontroversial premises. First, they contend that child abuse and neglect is a serious problem that must be addressed. Second, they contend that the General Assembly sought to incentivize good faith reports and complaints regarding suspected abuse by adopting the immunity statute, Code § 63.2-1512. From these two premises, defendants conclude that *all* who make good faith reports or complaints of child abuse or neglect enjoy the protection of immunity provided by Code § 63.2-1512, regardless of how or to whom they make such complaints or reports. They assert that "Virginia law provides immunity from civil liability for complaints of suspected child abuse unless the complaint is made in bad faith or with malicious intent." Although both of the premises underlying the defendants' public policy argument are unquestionably correct, neither those premises nor the language of Code § 63.2-1512 are sufficient to support such a conclusion.

As noted above, the language of Code § 63.2-1512 simply cannot support defendants' position that *all* good faith reports and complaints entitle the maker to civil and criminal immunity. In enacting the immunity statute, the General Assembly specifically delineated four categories of reports or conduct that would entitle a person acting in good faith to immunity. Within those four categories, the General Assembly, by reference to other statutes, further limited for whom Code § 63.2-1512 immunity was available. *See*, *e.g.*, Code § 63.2-1509 (identifying twenty subcategories of individuals who, in turn, can be entitled to immunity). If the General Assembly intended to grant immunity to all persons making good faith reports of suspected abuse or neglect, it would not have specified the four categories in Code § 63.2-1512 or the subcategories specified within the referenced statutes giving rise to those categories. Rather, it would have stated that "[a]ny person making a report [of suspected abuse or neglect] or who participates in a judicial proceeding resulting therefrom shall be immune from any civil or

8

criminal liability in connection therewith, unless it is proven that such person acted in bad faith or with malicious intent." It did not do so, electing instead to limit the grant of immunity to the four categories specified in the statute.

The fact that the General Assembly made that choice in clear and unambiguous language is fatal to defendants' public policy argument. As we have repeatedly noted, "[p]ublic policy questions . . . fall within the purview of the General Assembly. In a regime of separated powers that assigns to the legislature the responsibility for charting public policy, our function is limited to adjudicating . . . question[s] of law[.]" *Daily Press, LLC v. Office of the Exec. Sec'y*, 293 Va. 551, 557 (2017). It is not the function of this or any other court to make policy judgments that, in effect, expand or contract the statutory choices made by the General Assembly. *See City of Charlottesville v. Payne*, 299 Va. 515, 532 (2021) (recognizing that "[t]he judiciary is not to substitute its own judgment in place of the General Assembly's"). Because it cannot be reconciled with the words chosen by the General Assembly in enacting Code § 63.2-1512 and Code § 63.2-1510, defendants' public policy argument necessarily fails.

Defendants' resort to the absurdity canon fares no better. When, as is the case with Code § 63.2-1512 and Code § 63.2-1510, statutory language is clear and unambiguous, canons of statutory construction, including the absurdity canon, do not apply. *AAA Disposal Servs. v. Eckert*, 267 Va. 442, 445 (2004) (citing *Holsapple v. Commonwealth*, 266 Va. 593, 598 (2003); *Brown v. Lukhard*, 229 Va. 316, 321 (1985)).

Even if the absurdity canon could apply to this situation, it does not grant courts or litigants the power to ignore statutory language to achieve what either might consider a better outcome. For the purpose of the absurdity canon, "[a]n absurd result describes an interpretation that results in the statute being internally inconsistent or otherwise incapable of operation."

9

*Payne*, 299 Va. at 532. The fact that some, but not all, who make good faith reports of suspected child abuse or neglect are granted immunity by Code § 63.2-1512 does not render the statute internally inconsistent and certainly does not preclude its operation. The General Assembly, exercising its policy prerogatives, struck a balance—immunizing some good faith complaints but only those that were made consistent with the process set out in the relevant statutes. The absurdity canon simply does not permit this or any other court to alter that balance under the guise of statutory construction.

Our determination that Code § 63.2-1512 does not provide immunity to "a nonmandatory reporter who made a good-faith complaint regarding suspected child abuse to law enforcement without speaking to a Department of Social Services employee[,]" does not, standing alone, render such a person civilly liable for such a complaint. Rather, it means only that the issue of the person's potential liability is one to be decided not by a plea of immunity, but by the regular process of adjudicating alleged torts.

### III. CONCLUSION

The clear and unambiguous language of Code § 63.2-1512 and Code § 63.2-1510 makes clear that the General Assembly's grant of immunity does not extend to "a nonmandatory reporter who made a good-faith complaint regarding suspected child abuse to law enforcement without speaking to a Department of Social Services employee[.]" Accordingly, the answer to the certified question is "no."

*Certified question answered in the negative.*